# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 22, 2011

## MANNAKA OUNG v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-666     Seth W. Norman, Judge**

---

**No. M2010-02076-CCA-R3-PC - Filed December 15, 2011**

---

The Petitioner, Mannaka Oung, appeals the Davidson County Criminal Court's summary dismissal of his petition for post-conviction relief from his 2000 conviction for aggravated assault and resulting three-year suspended sentence. Oung filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel based on counsel's failure to advise him of the plea's possible effects on his immigration status and potential deportation. The post-conviction court concluded that the petition was barred by the statute of limitations and dismissed the petition. On appeal, Oung argues that his claim is based on a constitutional right that did not exist at the time of his plea, such that the statute of limitations does not bar his claim. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Patrick G. Frogge, Nashville, Tennessee for the Petitioner-Appellant, Mannaka Oung.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In August 2010, Oung filed a petition for post-conviction relief, asserting that his 2000 guilty plea was entered involuntarily because his counsel failed to inform him of the plea's possible effects on his immigration status. Based on Padilla v. Kentucky, 130 S. Ct. 1473 (2010), he argued that this failure amounted to the ineffective assistance of counsel.

See Padilla, 130 S. Ct. at 1483, 1486 (holding that counsel must inform a client when a plea risks deportation). He further argued that Padilla established a new rule that should be applied retroactively to his plea. In its order denying relief, the post-conviction court reasoned that Padilla, even if it established a new rule, did not require retroactive application. Consequently, it ruled that Oung's petition was barred by the statute of limitations and dismissed the petition.

**Analysis.** On appeal, Oung argues that the post-conviction court erred in dismissing his petition. He again asserts that Padilla established a new rule that dictates he receive post-conviction relief based on his counsel's ineffective assistance. Implicit in this argument is the proposition that the rule in Padilla should apply retroactively to this case, though Oung does not argue why it should apply retroactively. The State counters that although Padilla created a new rule, it does not apply retroactively, and the petition is untimely as a result.

A petitioner must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment becomes final. T.C.A. § 40-30-102 (Supp. 1996). In the absence of an appeal, a judgment generally becomes final thirty days after it is entered. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a), (c)). The statute stresses that "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." T.C.A. § 40-30-102 (a) (2006). A trial court shall not have jurisdiction to consider a petition filed after the expiration of the limitations period unless:

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States Supreme Court establishing a constitutional right that was not recognized as existing at the time of trial;
>
> (2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
>
> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case

the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

T.C.A. § 40-30-102(b)(1)-(3).

Here, Oung's petition was filed outside the standard one-year limitations period. He argues, however, that the first exception under Tennessee Code Annotated section 40-30-102(b)(1) applies because his petition is based on a new rule. His petition was filed on August 3, 2010, less than five months after Padilla. Next, then, we must consider whether Padilla "established a constitutional right that was not recognized as existing" when Oung pled guilty and, if so, whether "retrospective application of that right is required" under section 40-30-102(b)(1). Id. Regarding the first inquiry, whether a case establishes a new constitutional rule, a rule has been defined as "new" to include when the rule "breaks new ground or imposes a new obligation on the States or the Federal Government," or when the rule "was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989). Courts also consider whether the case establishing the rule was "susceptible to debate among reasonable minds," as evidenced by conflicting case law in different jurisdictions. Butler v. McKellar, 494 U.S. 407, 415 (1990). Regarding the second inquiry, whether a new rule should be applied retroactively to cases on collateral review, a new rule will apply retroactively only if (1) the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) the rule is a "watershed rule of criminal procedure" that is "central to an accurate determination of innocence or guilt." Teague, 489 U.S. at 311-13.

This court recently answered these questions about Padilla in Gerardo Gomez v. State, decided while Oung's case was pending on appeal. No. E2010-01319-CCA-R3-PC, 2011 WL 1797305 (Tenn. Crim. App., at Knoxville, May 12, 2011). This court held that Padilla did establish a new rule, but that the new rule does not apply retroactively. As a result, this court concluded that the rule in Padilla does not toll the statute of limitations to allow the filing of a petition for post-conviction relief beyond the one-year limitations period. Id. at *3-6. Oung's case is not materially different from Gerardo Gomez, and nothing compels a different outcome here. We therefore quote the Gerardo Gomez analysis extensively, and reach the same conclusion for the same reasons.

In deciding that Padilla announced a new rule, this court reasoned:

In 2004, this court held that deportation was a collateral consequence of a guilty plea and that trial counsel was not deficient for failing to inform the

-3-

petitioner of such a collateral consequence. Bautista v. State, 160 S.W.3d 917, 921-22 (Tenn. Crim. App. 2004). . . .

In Padilla, the Supreme Court concluded that deportation resulting from a petitioner's guilty plea was neither a direct nor a collateral consequence of pleading guilty. Padilla, 130 S. Ct. at 1482. Instead, the Court held that the "collateral versus the direct distinction [was] ill-suited to evaluating a [Strickland v. Washington, 466 U.S. 668 (1984)] claim concerning the specific risk of deportation." Id. The Court ultimately held that "counsel must inform [their] client whether [a] plea carries a risk of deportation" and that failure to advise their client of such a consequence was deficient. Id. at 1486. . . .

Gerardo Gomez, 2011 WL 1797305, at *3 (alterations in original).

This court continued:

While the Court had not addressed this issue prior to Padilla, several states had discussed whether counsel's failure to advise or erroneously advising a defendant of the deportation consequences of their guilty plea amounted to deficient performance. See Bautista, 160 S.W.3d at 921-22. These states came to conflicting conclusions. Id. Additionally, these states focused on a determination of whether deportation was either a direct or collateral consequence of pleading guilty. Id. Thus, the Supreme Court's decision in Padilla abrogated several state court decisions. See Oyekoya v. State, 558 So.2d 990 (Ala. Crim. App. [1989]); State v. Rosas, 904 P.2d 1245 (Ariz. Ct. App. 1995); Commonwealth v. Fuartado, 170 S.W.3d 384 (Ky. 2005); State v. Montalban, 810 So.2d 1106 (La. 2002); Commonwealth v. Frometa, 555 A.2d 92 (Pa. 1989). The Supreme Court's decision also abrogated several federal court decisions. See Broomes v. Ashcroft, 358 F.3d 1251 (10th Cir. 2004); United States v. Gonzalez, 202 F.3d 20 (1st Cir. 2000); United States v. Del Rosario, 902 F.2d 55 (D.C. Cir. 1990); United States v. Yearwood, 863 F.2d 6 (4th Cir. 1988); United States v. Campbell, 778 F.2d 764 (11th Cir. 1985).

While we acknowledge that the Supreme Court's decision in Padilla analyzed Strickland, the Court placed an affirmative duty on counsel to inform

their client of the deportation consequences of pleading guilty. [Padilla, 130 S. Ct.] at 1486. Given the legal landscape of the opinions decided before Padilla, such a rule was, at the very least, "susceptible to debate among reasonable minds" when the Petitioner pled guilty. See Butler, 494 U.S. at 415. Indeed, . . . four of the Supreme Court justices in Padilla believed that such a rigid requirement was not mandated by Strickland. See Padilla, 130 S. Ct. at 1491-97 (Alito, J., concurring) ("[T]he Court's decision marks a major upheaval in Sixth Amendment law."). Following our review, we conclude that the requirement established in Padilla was a new rule of law that was not dictated by prior case law and was not a simple extension of Strickland.

Gerardo Gomez, 2011 WL 1797305, at *5.

In deciding that the new rule of Padilla did not require retroactive application, this court stated:

First, the rule does not exempt those subject to deportation from the criminal lawmaking authority. Second, the rule was not a watershed rule of criminal procedure essential to the fairness of a proceeding. Cf. Gideon v. Wainwright, 372 U.S. 335 (1963) (establishing the right to counsel in felony criminal proceedings). At issue in Padilla was whether the petitioner had received the effective assistance of counsel in determining whether he should plead guilty. The Supreme Court held that counsel must inform their clients of the deportation consequences of pleading guilty. While this established a new requirement for counsel to comply with, it did not establish a right for defendants like the right established in Gideon, the right to counsel. Moreover, the rule did not relate to the overall fairness of the proceeding itself. Although the Court's decision in Padilla established a new rule of law, the rule of law should not be retroactively applied.

Gerardo Gomez, 2011 WL 1797305, at *6.

Because the rule does not apply retroactively for the reasons stated in Gerardo Gomez, it does not fit the exception to the statute of limitations under Tennessee Code Annotated section 40-30-102(b)(1). Consequently, Oung's petition was filed untimely, and the trial court's summary dismissal of it was proper.

**CONCLUSION**

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE